IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMY SPAHR, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | C.A. No. 19-113-MN |
| ) | |
| AMY COLLINS, et al., ) | |
| ) | |
| Defendants. ) | |

**<u>MEMORANDUM OPINION</u>**

Ronald G. Poliquin, THE POLIQUIN FIRM LLC, Dover, DE – Attorney for Plaintiffs.

Kenneth L. Wan, Robert M. Kleiner, DELAWARE DEPARTMENT OF JUSTICE, Wilmington, DE – Attorneys for Defendants.

December 17, 2021.
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE**

Before the Court is Defendants' Motion for Judgment on the Pleadings. (D.I. 29). For the reasons that follow, the Motion is GRANTED-IN-PART and DENIED-IN-PART.

I. **BACKGROUND**

On March 15, 2019, Plaintiffs Amy Spahr and Matthew Cain ("Plaintiffs") filed this 42 U.S.C. § 1983 action against Defendants Amy Collins, Romona Mirro,[1] and Jane Powell ("Defendants"), alleging that Defendants deprived them of their Fourth and Fourteenth Amendment rights. Defendants are all family service specialists who were employed by the State of Delaware Department of Services for Children, Youth, and Their Families ("DFS"). (D.I. 3 ¶¶ 3–5).

Plaintiffs are the parents of C.C., and Plaintiff Spahr is the mother of S.S., who were eleven-months-old and seven years old, respectively, at the time of relevant events.[2] (*Id.* ¶ 7). On January 17, 2018, Plaintiffs allege that Defendant Collins came to Plaintiff Spahr's home, demanded to speak with her, and after Spahr declined to do so, Collins responded that she would return with police. (*Id.* ¶ 8). Collins did just that, returning hours later with several police officers who were met by Plaintiff Cain after knocking on the door. (*Id.* ¶¶ 10–11). Collins insisted on entering the home to examine its cleanliness, Cain refused entry, but after calling the home's co-owner, Thomas Redden (Plaintiff Spahr's father), and obtaining his permission, Collins entered and examined the house and deemed it a suitable living space. (*Id.* ¶¶ 12–18). After leaving,

---

[1] The Complaint incorrectly spells Ms. Mirro's name as "Ramona Mira." (D.I. 7).

[2] Because C.C. and S.S. are minors, the Court will use their abbreviated names.

Collins then went to S.S.'s school and interviewed the child without Plaintiff Spahr's consent. (*Id.* ¶ 20).

Later that evening, Plaintiff Spahr attempted to pick up C.C. from Redden's house, but no one answered the door. Plaintiffs claim that no one at the Redden home answered the door because Collins instructed Redden's family that C.C. would be put into foster care if they spoke with Spahr or did not themselves take custody of C.C. (*Id.* ¶¶ 21–30). Spahr then returned to her own home where she found Collins waiting for her. Plaintiffs allege that Collins then presented Spahr with a Child Safety Agreement and threatened Spahr that her children would be sent to foster care if she did not sign it. (*Id.* ¶¶ 21–28). According to Plaintiffs, Spahr was not given time to review the plan and could not read it because it was dark outside. (*Id.* ¶ 30). Collins ultimately signed the agreement.

The Child Safety Agreement, attached to the Complaint, provides further context. In a section entitled "What is causing immediate safety threats to the child(ren)?", Collins wrote "Amy and Matthew Cain have ongoing domestic violence and children are present. S.S. has been in between the fights trying to stop fights. Concerns for children who may be harmed during domestic incidents." (*Id.*, Ex. 1). The plan provides that S.S.'s natural father will keep S.S. "until further notice" and that C.C. will reside with the Redden family (Spahr's father and stepmother) "until DFS completes its investigation can [sic] deemed the child safe." (*Id.*) The plan further provides that "[i]f Amy attempts to remove C.C. from maternal grandparents care they will call DFS and 911." By the plan's terms, the agreement was to be effective for a maximum of thirty days after signature. The plan also provides that "the agreement will be reviewed to determine if the agreement will continue, be amended, terminated, or a new agreement will be developed." (*Id.*). Plaintiffs assert the plan was voluntary and could be rescinded at any time. (*Id.* ¶ 31).

Days later, after consulting with a lawyer, Plaintiffs informed Defendants that they wanted their children returned immediately. (*Id.* ¶ 35). But Plaintiffs assert that "[f]or the next 21 days, Defendants . . . actively prevented Plaintiffs . . . from recovering their minor children." More specifically, Plaintiffs allege that Defendants misrepresented to the Delaware State Police, Dover Police Department, and Redden that there was a court order separating Plaintiffs from their minor children. (*Id.* ¶¶ 40–41, 46, 47). The net result of this, per Plaintiffs, is that Defendants "unlawfully detain[ed] S.S. and C.C. from the care of their parents." Meanwhile, Plaintiffs and Defendants agree that "DFS never filed any documentation with the Family Court prohibiting Spahr and Cain from seeing C.C." (*Id.* ¶ 53; D.I. 7 ¶ 53).

Ultimately, Plaintiffs were able to reunite with their children after twenty-one days. Though not clearly described in the Complaint, it appears that a judge became involved at some point, as Plaintiffs allege that "[Defendant] Powell called the Dover Police Department and advised them on what the judge had ordered." (*Id.* ¶ 54). This led officers to accompany Plaintiff Cain to Redden's home to retrieve C.C. and return the child to parental custody. Plaintiffs allege that the ordeal caused Plaintiff Cain to lose his employment, inflicted severe emotional distress on Plaintiffs and their children, and caused lasting damage to the relationship between Plaintiffs and Thomas Redden. (*Id.* ¶¶ 55–57).

Plaintiffs brought a procedural due process, unlawful removal, familial association, and *Monell* claim against all three Defendants. Defendants filed an answer to the Complaint (D.I. 7) and moved for judgment on the pleadings. (D.I. 29). That motion is now before the Court.

## II.   LEGAL STANDARD

A motion for judgment on the pleadings should be granted if the movant establishes that "there are no material issues of fact, and he is entitled to judgment as a matter of law." *Zimmerman*

*v. Corbett*, 873 F.3d 414, 417 (3d Cir. 2017). A motion for judgment on the pleadings that asserts that the complaint fails to state a claim upon which relief can be granted is reviewed under the 12(b)(6) standard. *Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991). Thus, for the Complaint to survive a motion for judgment on the pleadings, it must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the Complaint, the Court must accept as true all factual allegations and view those facts in the light most favorable to the non-moving party. *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir.1989). But courts are "not bound to accept as true a legal conclusion couched as a factual allegation" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" for the purposes of pleading factual matter. *Iqbal*, 556 U.S. at 678–79.

The Court's standard of review is different for defendants who plead absolute and qualified immunity. Defendant Powell contends that she is entitled to either absolute or qualified immunity and Defendants Collins and Mirro assert that they deserve qualified immunity. "[T]o earn the protections of absolute immunity' at the motion-to-dismiss stage, a defendant must show that the conduct triggering absolute immunity clearly appear[s] on the face of the complaint." *Weimer v. Cty. of Fayette, Pennsylvania,* 972 F.3d 177, 187 (3d Cir. 2020) (citations and internal quotation marks omitted). With respect to qualified immunity, "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

### III. DISCUSSION

Count I asserts a procedural due process, unlawful removal, and familial association claim against each Defendant. Count II asserts a *Monell* claim against each Defendant. The Court will address each claim in turn.[3]

#### A. Procedural Due Process

Defendants move for judgment on the pleadings on Plaintiffs' procedural due process claim. To raise a procedural due process claim under § 1983, a plaintiff must show that "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233–34 (3d Cir.2006).

The law recognizes "the constitutionally protected liberty interests that parents have in the custody, care and management of their children[,]" though this interest is "limited by the compelling governmental interest in the protection of children – particularly where the children need to be protected from their own parents." *Croft v. Westmoreland Cty. Child. & Youth Servs.*, 103 F.3d 1123, 1125 (3d Cir. 2003). Much like other areas of the law where rights are not absolute, the importance of process is amplified. Thus, "[t]he procedural component of parental due process rights [] requires rigorous adherence to procedural safeguards anytime the state seeks to alter, terminate, or suspend a parent's right to the custody of his minor children." *McCurdy v. Dodd*, 352 F.3d 820, 827 (3d Cir. 2003).

---

[3] The Court reaches the merits because sovereign immunity does not apply in this case. "[T]he Eleventh Amendment does not erect a barrier against suits to impose 'individual and personal liability' on state officials under § 1983." *Hafer v. Melo*, 502 U.S. 21, 31 (1991) (citations omitted). Plaintiffs have sued Defendants in their individual capacities, so sovereign immunity cannot shield Defendants from liability.

6

Here, Plaintiffs' procedural due process claim rests on the allegations that Plaintiff Spahr was coerced into signing the Child Safety Agreement. Plaintiffs allege that Defendant Collins told Plaintiff Spahr that her children would be sent to foster care if Plaintiff did not sign off on the Child Safety Agreement, and that she was given no time to read the agreement. Plaintiffs further allege that Plaintiff Spahr was given an ultimatum and coerced into signing away her constitutionally protected liberty interest in the care and custody of her children without an opportunity to even read the agreement. The agreement's terms specified that it would remain in effect for thirty days and that the agreement would be reviewed prior to its expiration, but, at this stage of the proceedings, it appears that no meaningful review occurred. Accordingly, Plaintiffs have stated a procedural due process claim against Defendant Collins that relate to the allegations that Plaintiff was coerced into singing the Child Safety Agreement. Because these allegations relate solely to Defendant Collins' actions, however, and not those of Defendants Mirro and Powell, the procedural due process claims against both Mirro and Powell must be dismissed.

Moreover, the Court finds that Defendant Collins is not entitled to qualified immunity at this stage of the proceedings because the Complaint states a violation of rights that were sufficiently clear at the time of the alleged violation. *See Mullenix v. Luna*, 577 U.S. 7, 11 (2015) ("A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'") (citation omitted); *Sharrar v. Felsing*, 128 F.3d 810, 826 (3d Cir. 1997) (explaining that qualified immunity is appropriate when government officials' conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."). In *Croft v. Westmoreland Cty. Child. & Youth Servs*., the Third Circuit stated that "removing the suspected parent from the family home during the pendency of child abuse investigations absent any procedural safeguards raises a

procedural due process issue." 103 F.3d 1123, 1126 n. 3 (3d Cir. 1997). *Croft* involved a case where the Defendant, lacking any objectively reasonable grounds to believe the child had been sexually abused or was in imminent danger of such abuse, gave the child's father an ultimatum to leave the house and stay away from his daughter or her daughter would be put in foster care. Courts have interpreted *Croft* to clearly provide that "a coerced safety plan involving separation of parent(s) from child violates federally protected rights if it is presented to the parents without legal authority," and have denied qualified immunity at the motion-to-dismiss stage to Defendants in cases alleging violations of the procedural due process right spelled out in *Croft*. *See Isbell v. Bellino*, 983 F. Supp. 2d 492, 513 (M.D. Pa. 2012); *Starkey v. York Cty.*, No. 1:11-CV-00981, 2011 WL 11071762, at *7–8 (M.D. Pa. Sept. 21, 2011). Thus, the Court will grant the motion as to the procedural due process claims against Mirro and Powell and deny it as to Collins.

B. **Substantive Due Process Claims: Unlawful Removal and Familial Association**

Plaintiffs appear to be asserting a substantive due process claim against all Defendants for violating Plaintiffs' "right to be free from the removal of the children from their family home . . . without first obtaining a warrant or other court order to do so" and "unlawfully detain[ing] S.S. from the care of their parents." (D.I. 3 ¶¶ 59, 63). Regarding the allegedly unlawful removal, Plaintiffs assert that Defendant Collins removed their children without a valid court order or any other legally sufficient basis. With respect to the allegations of "unlawful detaining," Plaintiffs allege that the falsehoods Defendants told to Redden and police officers obstructed Plaintiffs' ability to rescind the voluntary Child Safety Agreement and retrieve their child. Plaintiffs assert violations of two rights protected by the substantive due process component of the Fourteenth Amendment: that Defendants' removal was unlawful and that Defendants' subsequent actions violated their right of familial association.

8

        1.      Unlawful Removal

To prevail on their substantive due process claim with respect to the removal of their children, Plaintiffs must show that the Defendants' decision-making was so clearly arbitrary that it shocks the conscience. *See Miller v. City of Philadelphia*, 174 F.3d 368, 374–76 (3d Cir 1999). This standard is met when state actors interfere with the parental relationship without "some reasonable and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse." *Croft*, 103 F.3d at 1126. Thus, the Court's focus "is whether the information available to the defendants at the time would have created an objectively reasonable suspicion of abuse justifying the degree of interference with the [Plaintiffs'] rights as [] parents." *Id.*

Viewing the evidence as the Court must when reviewing this motion, the Court finds that Plaintiffs have plausibly stated a substantive due process claim against Defendant Collins with respect to the removal of children from the home. To separate a child from their guardian, social workers must have a reasonable and articulable basis for believing a child is in danger of abuse. In *Croft*, the defendant acted on a six-fold hearsay report by an anonymous informant, and the Third Circuit held that summary judgment on plaintiff's substantive due process claims in defendant's favor was inappropriate because the hearsay report did not give rise to a reasonable and articulable suspicion of abuse. 103 F.3d at 1126 – 27.

At this stage of the proceeding, the Court has no way to discern the reasonableness of Collins' basis for seeking to alter Plaintiffs' parental rights. Although the Child Safety Agreement reveals that "Amy and Matthew Cain have ongoing domestic violence and children are present. [S.S] has been in between the fights trying to stop fights. Concerns for children who may be harmed during domestic incidents," it does not reveal the basis for those beliefs. Having already

determined that there is a clearly established right to be free from having children removed without any reasonable and articulable evidence giving rise to a suspicion of abuse, and not having in the record any evidence that there was any reasonable basis for Defendant Collins' decision, the Court must deny Defendant Collins' motion. It may be entirely possible, or even likely, that discovery will produce evidence indicating a reasonable and articulable basis for Collins' belief, but until such evidence is in the record, granting Collins' motion for judgment on the pleadings would be premature. As to the other Defendants, Mirro and Powell, Plaintiffs do not allege that they were involved in removing C.C. from Plaintiffs' custody, and the Court will grant their motion on the unlawful removal claim.

2.  Familial Association

Next, the Court must determine whether Plaintiffs have sufficiently pleaded a "familial association" claim regarding the Plaintiffs' inability to reunite with their children after the initial removal. The thrust of Plaintiffs' allegations on this point is that they were not able to rescind the purportedly voluntary Child Safety Agreement because Defendants misrepresentations led Redden to refuse to return C.C. to Plaintiffs, and Plaintiffs also could not get police officers' intervention because Defendants' misrepresentations led police officers to refuse to aid in their efforts. This, per Plaintiffs, violated their right of familial association protected by the substantive component of the Fourteenth Amendment's Due Process Clause.

The Court grants Defendants' motion for judgment on the pleadings because Plaintiffs have failed to show that Defendants violated Plaintiffs' clearly established right of familial association. A right is clearly established when the law is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). As explained earlier, Plaintiffs substantive due process claims may only be

10

sustained if they have pleaded conduct that "shocks the conscience." *Newman v. Beard*, 617 F.3d 775 (3d Cir. 2010). The Court grants Defendants' motion for three reasons.

First, Plaintiffs do not attempt to show how the allegations regarding "unlawful detaining" violated Plaintiffs' clearly established rights. To show that a right is "clearly established" for the purposes of qualified immunity, the Supreme Court has stressed the importance of case law that places the statutory or constitutional question at issue beyond debate. *See White v. Pauly*, 137 S.Ct. 548, 551 (2017). Plaintiffs have cited no case law whatsoever to support their position. "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990), *cert. denied*, 494 U.S. 1082 (1990). Because Plaintiffs have not attempted to develop the "unlawful detaining" claim in any way, the claim must be dismissed against all Defendants.

Second, even if the Court were to look past Plaintiffs' counsel's failure to develop the claim, the Court is skeptical that Plaintiffs have pleaded conduct that "shocks the conscience" with respect to the familial association claim. The Child Safety Agreement, which Plaintiffs attached to the Complaint, states that "[The Redden family] will not allow C.C. to be removed from their care until DFS completes its investigation and can deemed [sic] the child safe. If Amy attempts to remove C.C. from maternal grandparents care they will call DFS and 911." Plaintiffs allege that Defendants told Redden and various police officers that there was a court order separating Plaintiffs from their children, even though there was no actual court order. Although the Child Safety Agreement is no court order, it does not "shock the conscience" that family service specialists would confuse the two in the midst of their high-pressure jobs.

Last, if Plaintiffs' "unlawful detaining" claim is based on the Fourth Amendment, as Plaintiffs somewhat suggest (*see* D.I. 3 ¶ 59), there is another reason to dismiss that claim against all Defendants. Fourth Amendment rights are personal rights. *See Alderman v. United States*, 394 U.S. 165, 174 (1969) ("Fourth Amendment rights are personal rights which . . . may not be vicariously asserted."). Plaintiffs do not allege that they themselves were unlawfully detained, but that their children were. But because Fourth Amendment rights are personal, they cannot be vicariously asserted. *See Southerland v. City of New York*, 680 F.3d 127, 143 (2d Cir. 2012) ("A Fourth Amendment child-seizure claim belongs only to the child, not to the parent, although a parent has standing to assert it on the child's behalf."). The child allegedly seized is not a party to this action. Because Plaintiffs do not purport to bring suit on behalf of their children, any claim based on their children's Fourth Amendment rights must be dismissed.

Accordingly, the Court grants Defendants' motion for judgment on the pleadings on Plaintiff's familial association claim.

## C. *Monell* Claim

Plaintiffs also bring a *Monell* claim against Defendants in their individual capacities. The claim alleges that Defendants established or followed policies, procedures, customs, usages, and practices that were the moving force of the deprivations of constitutional rights that Plaintiffs suffered. Plaintiffs' *Monell* claim, however, must be dismissed because it is no *Monell* claim at all. In *Monell v. Dep't of Soc. Servs. Of City of New York*, the Supreme Court held that § 1983 claims may be brought against political subdivisions and their officials sued in their official capacities. 436 U.S. 658, 690–91 (1978). Plaintiffs' asserted *Monell* claim is brought against all three Defendants in their individual capacities and therefore cannot stand as pleaded. *See Speakman v. Williams*, 440 F.Supp.3d 376, 390 n.15 (D. Del. 2020) (explaining that the complaint

did not state a *Monell* claim against two defendants "because Count III is a *Monell* claim and both Williams and Goode are sued in their individual capacities."). Therefore, Defendants' motion for judgment on the pleadings is granted with respect to Plaintiffs' *Monell* claims.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion for judgment on the pleadings is DENIED-IN-PART and GRANTED-IN-PART. An appropriate order will be entered.